[Cite as *In re C.A.*, 2013-Ohio-3903.]

STATE OF OHIO )                    IN THE COURT OF APPEALS
) ss:                    NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT )

IN RE C.A.                              C.A. No.        26690


                                        APPEAL FROM JUDGMENT
                                        ENTERED IN THE
                                        COURT OF COMMON PLEAS
                                        COUNTY OF SUMMIT, OHIO
                                        CASE No.        DL 12-08-001899

DECISION AND JOURNAL ENTRY

Dated: September 11, 2013

BELFANCE, Presiding Judge.

{¶1} Defendant-Appellant C.A. appeals from the decision of the Summit County Court of Common Pleas, Juvenile Division. For the reasons set forth below, we affirm.

I.

{¶2} On June 18, 2012, around 8:30 p.m., Daryle Dean was driving his car near the intersection of Blanche and La Croix Streets in Akron when gunshots were fired at his vehicle. Based upon that incident, a complaint was filed against then 15-year-old C.A. alleging that C.A. was delinquent in committing acts that would constitute felonious assault if committed by an adult. Subsequently, the complaint was amended to add a firearm specification. The matter proceeded to trial, and the court adjudicated C.A. delinquent of felonious assault and the firearm specification. C.A. was committed to the custody of the Ohio Department of Youth Services for a minimum term of two years and a maximum term of age twenty-one. C.A. has appealed, raising a single assignment of error for our review.

II.

ASSIGNMENT OF ERROR

[C.A.'S] ADJUDICATIONS FOR FELONIOUS ASSAULT AND THE CORRESPONDING FIREARM SPECIFICATION WERE SUPPORTED BY INSUFFICIENT EVIDENCE, AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IN VIOLATION OF [C.A.'S] RIGHT TO DUE PROCESS OF LAW UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION 10, ARTICLE 1 OF THE OHIO CONSTITUTION.

{¶3}    C.A. asserts in his sole assignment of error that his adjudications were based upon insufficient evidence and were against the manifest weight of the evidence.  We do not agree.

**Sufficiency**

{¶4}    "When considering this issue, this Court applies the same standard of review as that applied in an adult criminal context."  *In re L.M.,* 9th Dist. Summit No. 25693, 2012-Ohio-1025, ¶ 7.  "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo."  *State v. Williams*, 9th Dist. Summit No. 24731, 2009–Ohio–6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶5}    C.A. was charged with, and adjudicated delinquent by reason of, felonious assault in violation of R.C. 2903.11, along with an accompanying firearm specification.  R.C. 2903.11(A)(2) states that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."  On appeal, C.A.

only asserts that there was insufficient evidence to establish that C.A. was the person who shot at Mr. Dean's car. "[I]dentity is an element that must be proven by the state beyond a reasonable doubt * * *." (Internal quotations and citation omitted.) *State v. Minor,* 9th Dist. Summit No. 26362, 2013-Ohio-558, ¶ 9. C.A.'s argument is essentially that Mr. Dean's testimony is not credible and did not comport with other testimony and, thus, there was insufficient evidence that C.A. shot at Mr. Dean's car. However, "[w]hile identity is an element that must be proven by the state beyond a reasonable doubt, the credibility of witnesses and their degree of certainty in identifying the defendant are matters affecting the weight of the evidence." *State v. Flynn,* 9th Dist. Medina No. 06CA0096-M, 2007-Ohio-6210, ¶ 12. When reviewing the sufficiency of the evidence, this Court must view the evidence in a light most favorable to the prosecution and determine, if the evidence is believed, whether it is sufficient to sustain a finding of delinquency. *See Jenks* at paragraph two of the syllabus.

{¶6} Mr. Dean testified that he had known C.A. since C.A. was a small child as C.A. grew up across the street from a member of his family. Mr. Dean stated that on June 18, 2012, around 8:30 p.m., he was driving down Blanche and saw an individual standing on the left side of the street. It was dusk, and Mr. Dean had his music turned up and so did not hear anything but noticed that his driver's side window had shattered. At that point, Mr. Dean turned onto La Croix and pulled into the driveway of his friend, Clarence Jackson. Mr. Jackson indicated that he had just heard gunshots. Mr. Dean examined the outside of his vehicle and saw a bullet hole in the door. Mr. Dean looked over to the area he had come from, and the only person he saw was C.A. who had a weapon in his hand. C.A. proceeded to take off his t-shirt, wrapped the gun in the t-shirt, and handed it off to someone in what Mr. Dean described as a Charger. The car then sped away, and C.A. then ran down the street. Mr. Dean stated that he had no doubt that the

person he saw was C.A. Mr. Dean then called C.A.'s grandmother and told her that C.A. had just shot at his car and proceeded to her house. Mr. Dean testified, "I know who shot at my car. It wasn't nobody else standing over there. Wasn't nobody with [C.A.]. * * * It would be different if I hadn't seen him wrap the gun up in the T-shirt and take off running * * *." Mr. Dean later confronted C.A. about the incident. C.A. denied shooting at Mr. Dean but did say that he was sorry.

{¶7} In light of the foregoing, we can only conclude that sufficient evidence was presented, if believed, whereby a trier of fact could conclude that C.A. was the person who shot at Mr. Dean's car. While no one testified to actually seeing C.A. shoot at the car, there was sufficient circumstantial evidence whereby it could be concluded that C.A. was the shooter. Accordingly, we overrule the first portion of C.A.'s assignment of error.

**Manifest Weight**

{¶8} C.A. next asserts that his delinquency adjudication is against the manifest weight of the evidence based upon conflicts in the evidence. We do not agree.

{¶9} In reviewing a challenge to the weight of the evidence, the appellate court

> [m]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶10} In the instant matter, the trial court found that Mr. Dean's testimony was more credible than the testimony of the other witnesses. The trial court was aware that Mr. Dean had a fairly lengthy criminal history that extended into the not-so-distant past. Nonetheless, the trial

court still found Mr. Dean's testimony to be credible. After a thorough and independent review of the record, we cannot say that the trier of fact lost its way.

{¶11} In addition to Mr. Dean's testimony, the State presented the testimony of several other witnesses. The other witnesses who were present in the area at the time of the shooting gave testimony that departed somewhat from that of Mr. Dean's in a few respects. Mr. Dean was the only witness who testified to seeing C.A. hand a gun off to someone in a car. In fact, Mr. Dean was the only witness who testified to seeing C.A. with a weapon. Additionally, Mr. Dean was the only one to describe a Charger being in the area.

{¶12} Mr. Jackson who lived on La Croix testified that he was inside his home at 8:30 p.m. on June 18, 2012, when he heard two gunshots. When he heard them, he went out his side door and saw "a bunch of kids scattering" and saw Mr. Dean pulling into his driveway. In addition, he saw the back of a red car that could have been a Cavalier, fly down the street, go through a stop sign, and turn down another street. Mr. Dean got out of the car and said, "I think somebody just shot at me." When Mr. Dean shut the car door, the window shattered. Mr. Dean told Mr. Jackson that he thought C.A. shot at him. While Mr. Jackson had seen C.A. earlier in the evening, he had not seen him after he heard the gunshots.

{¶13} Paris Dean, Mr. Dean's brother, also lived on La Croix. The evening of June 18, 2012, he saw his brother's car drive by as he was sweeping his porch. Paris observed his brother turn and then make a left-hand turn into a driveway. Shortly after, he saw a red Cavalier with two to four men inside. One of the passengers was putting on or taking off a t-shirt. Paris indicated that the red car was immediately behind Mr. Dean's car. As Paris looked away he heard gunshots. He did not know where the gunshots came from, but he may have later told police it was possible they came from the red car. He then saw Mr. Dean pulling out of the

driveway and also saw C.A. running and laughing and heading towards Thornton Street. Paris indicated that C.A. was alone at the time and he did not see a weapon on him.

{¶14} Additionally, C.A.'s grandmother testified. While she did not testify about the shooting, she did acknowledge that she and Mr. Dean were close friends prior to the shooting and that Mr. Dean did call her that day and say that C.A. shot at his car. Further, C.A.'s grandmother indicated that the whole neighborhood was talking about the fact that Mr. Dean was an informant for the police and that after the shooting, C.A.'s grandmother told at least one person to stay away from Mr. Dean since someone shot at him.

{¶15} Finally, three members of the Akron Police Department testified. Officer Justin Morris responded to a call of shots fired on June 18, 2012, near Blanche and La Croix. The caller indicated that a possible suspect vehicle was a red Cavalier and that two shots were heard. When police arrived to the area, Paris flagged officers down, and police determined that Mr. Dean was the possible victim. Shortly thereafter, Mr. Dean called the police, and, when police went to Mr. Dean's location, they found his car had a shattered driver's side window and a bullet hole in the door. A spent round was recovered from the floorboard area of front driver's seat of Mr. Dean's car. The undercarriage area of the driver's side of vehicle also had evidence that a bullet had hit it and bounced off. Mr. Dean indicated that he thought C.A. was the one who shot at him. No gun was ever recovered.

{¶16} In August 2012, C.A. was interviewed by police and told police that he did not do it but saw who did. He said he saw a red Cavalier, and Mr. Dean's car, heard gunshots go off, and then saw Mr. Dean's vehicle pull into a driveway on La Croix. C.A. then ran because he heard police sirens and had a probation violation.

{¶17} We cannot say that the adjudication of delinquency is against the manifest weight of the evidence. While it is true that the three witnesses who were outside in the area around the time of the shooting gave somewhat conflicting reports, it is the trier of fact's responsibility to resolve those conflicts. The trial court in this case found Mr. Dean's testimony to be credible and noted that the other witnesses had different views of the scene. We cannot say the trier of fact's resolutions of the conflicts or credibility determinations were unreasonable. In fact, it is possible that, despite the fact that Mr. Jackson did not see C.A. after the shooting and that Paris did not see C.A. with a gun, that could have been merely because they each were observing events from different points of view or did not happen to observe what someone else saw due to the likely confusing and distracting situation that arose after the witnesses heard the gunshots. In other words, because of the tension created by the situation, or the differing vantage points, the other witnesses could have missed, or been unable to see, C.A. give a gun to someone in a car.

{¶18} Moreover, it was not unreasonable for the trier of fact to conclude that the Charger discussed by Mr. Dean was the same vehicle described as a Cavalier by the other witnesses; further, the inconsistency does not necessitate the conclusion that Mr. Dean's testimony was not credible. All of the witnesses who testified about the scene only commented on one other vehicle, aside from Mr. Dean's. The fact that Mr. Dean's description of the vehicle does not match the other witnesses exactly, does not necessarily warrant the conclusion that Mr. Dean's testimony was unreliable or that his testimony was not credible.

{¶19} After a thorough review of the evidence, we cannot say that the trier of fact lost its way in concluding that C.A. shot at Mr. Dean's vehicle on June 18, 2012. Thus, we overrule C.A.'s argument and his sole assignment of error.

III.

{¶20}  In light of the foregoing, we affirm the judgment of the Summit County Court of Common Pleas, Juvenile Division.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

CARR, J.
HENSAL, J.
CONCUR.

APPEARANCES:

SHERYL A. TRZASKA, Assistant State Public Defender, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.